United States District Court
Northern District of Indiana
Hammond Division

| | |
|---|---|
| JEFFREY IRONS, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> COMMISIONER OF SOCIAL <br> SECURITY, <br><br> Defendant. | Civil Action No. 2:11–CV–427 JVB |

**OPINION and ORDER**

Plaintiff Jeffrey Irons seeks judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security, who denied his application for Social Security disability benefits and Supplemental Security Income disability benefits under the Social Security Act. Plaintiff requests that this Court set aside the Decision of the Administrative Law Judge (ALJ), or in the alternative, that the matter be reversed and remanded for further proceedings. For the following reasons, the Court AFFIRMS the ALJ's decision.

**A. Procedural Background**

On August 24, 2007, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he became disabled on May 2006. (Pl.'s Compl. 2., R. 40, 324) The amended onset date is May 25, 2006 (R. 89.) This claim was denied initially on January 29, 2008, and upon reconsideration on June 24, 2008. (*Id.*) On August 6,

1

2008, Plaintiff timely filed a Request for Hearing and testified before ALJ Dennis R. Kramer on December 16, 2009. (*Id*.) The ALJ determined that Plaintiff was not disabled because jobs he could perform existed in significant numbers in the national economy. (R. 25–26, 131.) On September 15, 2011, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Pl.'s Compl. 2–3.) Plaintiff seeks judicial review of Defendant's denial of his claim. (*Id*. at 3.)

### B. Factual Record

#### (1) *Plaintiff's Background and Testimony*

Plaintiff was born on August 10, 1962. (R. 25.) Plaintiff is a resident of Gary, Indiana. (Pl.'s Compl. 2.) Plaintiff is 5'5", weighs 128 pounds, and has his GED. (R. 25, 41, 337.) On a typical day, Plaintiff has constant pain in his legs from the waist down, shortness of breath, neck pain radiating down to his elbow, and occasional headaches, but is able to prepare simple meals, dress himself, and do some self–hygiene. (R. 51–55, 66–67.)

At the hearing, Plaintiff testified that his mother does most of his cleaning and shopping. (R. 52–54.) Plaintiff also testified that his medicine makes him drowsy and therefore unable to drive. (R. 52–54.) Further, Plaintiff reported that he spends about ten days per month in bed but has difficulty sleeping. (R. 71, 79–80.) Plaintiff estimated that he could lift but not carry a gallon of milk with one hand. (R. 68–70.) Plaintiff also testified that he must alternate between sitting ten to fifteen minutes and standing five to ten minutes and can climb four stairs before resting. (R. 69–74.) Plaintiff also testified that he can bend and squat. (R. 73–74.) Plaintiff reported using a cane for the past four years for his difficulties with walking. (R. 49–50.) Plaintiff also mentioned an unexplained problem causing him to drop items on a weekly basis. (R. 65–66.)

Plaintiff has worked as a grounds and maintenance employee, package handler/voicer, slot technician, and in sales. (R. 332.) Plaintiff was insured for the purposes of DIB through at least September 30, 2009. (R. 16.)

**(2)** *Medical Evidence*

On February 18, 2004, Plaintiff underwent a spirometry[1] that revealed moderate restriction with a mild decrease in diffusion capacity. (R. 471.) Later that month, Plaintiff was treated at Methodist Hospital for abscess of the lung, iron deficiency anemia secondary to chronic blood loss, bacterial pneumonia, emphysema, pulmonary collapse, respiratory complications, disease of the white blood cells, and removal of an organ. (R. 478–482.) An x–ray revealed post-left thoracotomy and chest wall emphysema. (R. 516.) On February 28, 2004, Plaintiff underwent a closed tube thoracostomy[2] surgery. (R. 539–540.)

The following month, Plaintiff was readmitted to Methodist Hospital for treatment of his bacterial pneumonia and disease of the white blood cells. (R. 542–543.) Testing revealed abnormal results including a low red blood cell count, a low hemoglobin count, a high white blood cell count, and a high platelets count. (R. 543.)

In an August 19, 2004, workfare medical exemption form, Plaintiff stated that he was unable to work because he suffered from radiculopathy and chronic lung disease. (R. 410.) Three months later, Plaintiff was diagnosed with arthritis and chronic pain syndrome. (R. 421.)

On May 5, 2005, Plaintiff was assessed with neuropathy. (R. 422.) Four months later, Plaintiff was noted as having gait disturbance. (R. 616.) In November, an MRI confirmed mild

---

[1] A test to determine the capacity of the lungs.

[2] The construction of an artificial opening through the chest wall usually for the drainage of fluid or the release of an abnormal accumulation of air.

dextroscoliosis of the spine and possible degenerative disc disease. (R. 817.) A January 2006 progress report added scoliosis to Plaintiff's impairments. (R. 614.) An MRI in February 2006 confirmed degenerative disc disease. (R. 631.)

In late October 2006, Plaintiff was again admitted to Methodist Hospital for a pulmonary embolus. (R. 429.) Dr. Emeric Palmer noted shortness of breath, chest pain, and embolism in right lung evidenced by an abnormal CT. (R. 437–440.) Dr. Palmer also and suggested that Plaintiff is a surgical candidate for his degenerative disc disease. (R. 437–440.) In December, Plaintiff was assessed as having lumbar disc disease and a cervical disc disease. (R. 607.)

One year later, Plaintiff was assessed with controlled hypertension, chronic low back pain, a history of pulmonary embolism, left upper lobectomy from 2004 with removal of non-malignant mass of the left lung, inability to do range of motion of either hip, and degenerative disc disease. (R. 582–584.) It was noted that Plaintiff has good range of motion in hands and wrists and can walk without the cane. (R. 583–584.) Plaintiff weighed 120 pounds at this time. (R. 583.)

During a physical residual functional capacity ("RFC") assessment on January 9, 2008, the reviewing physician determined that Plaintiff was capable of lifting or carrying twenty pounds occasionally and ten pounds frequently, standing or walking six hours and sitting six hours in an eight hour workday, and occasionally climbing stairs but not ladders. (R. 692–693.) During a physical exam later that month, Plaintiff was noted as having an unsteady gait and decreased strength in back. (R. 743.) During physical therapy sessions from January to May, Plaintiff was noted as having fatigue and continuing back pain. (R. 709, 721, 734, 900, 903.) The above disorders persisted through March 2009. (R. 709, 721, 734, 900, 903.)

On May 8, 2008, Plaintiff was admitted to Methodist Hospital for abdominal pain, vomiting, and bowel obstruction and underwent surgery to correct the bowel obstruction. (R. 757, 782–783.)

In March 2009, Dr. Caleb R. Lippman noted that Plaintiff moved all extremities well and sat comfortably in no active distress (R. 947.) The next month, Plaintiff underwent a functional capacity evaluation with a therapist who determined that Plaintiff had a decreased level of alertness, appeared unsteady, experienced trouble standing, and had slightly below average grip strength. (R. 830.)

Near the end of 2009, Dr. Walter Muller determined that Plaintiff could lift ten pounds frequently, but no more than ten pounds; sit six hours, stand one hour, walk one hour in an eight hour workday; balance, stoop, kneel, crouch, but never crawl or climb stairs or ladders; occasionally be exposed to humidity, dusts, extreme heat and cold, and vibrations; and frequently reach in all directions including overhead. (R. 881–885.)

On January 26, 2010, Dr. Carl S. Hale diagnosed Plaintiff with a depressive disorder, a pain disorder, and a GAF score of 50. (R. 896.) Dr. Hale further opined that Plaintiff had mild to moderate limitations in his ability to make judgments on complex work–related decisions, mild limitations on his ability to understand, remember, and carry out complex instructions, and moderate limitations in his ability to interact appropriately with the public. (R. 897–898.)

**(3)** *Testimony of Medical Expert*

At the hearing, Medical Expert ("ME") Walter J. Miller testified that Plaintiff did not meet or equal a 20 CFR 404 listing. (R. 82–86.) The ME noted Plaintiff's history of hypertension, degenerative disc disease (cervical and lumbar), mild scoliosis, and complaints of hand and elbow pain with no clear cut cause. (R. 84–85.) The ME found no signal implying

nerve damage or evidence of real gait disturbance. (R. 84–85.) The ME opined that Plaintiff could remain in a sedentary position for six hours, stand for one hour, or walk for one hour, rendering the cane medically unnecessary. (R. 87–88.) The ME further testified that Plaintiff could lift ten pounds frequently but could not lift twenty, fifty, or one hundred pounds. (R. 86–87.) The ME also stated that Plaintiff could stoop, kneel, and crouch occasionally but could not crawl or climb stairs (R. 88-89.) The ME further stated that Plaintiff could be exposed to heights, dust or fumes, humidity or wetness, extreme cold or heat, and vibrations occasionally. (R. 88–89.) The ME stated that Plaintiff could not operate a vehicle or work around machinery because of the effects of prescribed medications. (R. 92–95.)

### (4) *Testimony of Vocational Expert*

At the 2010 hearing, the ALJ posed two hypotheticals to Vocational Expert Thomas Grzesik. (R. 127.) First, the ALJ asked him to consider an individual who could engage in some limited overhead work and had mild limitations in making judgments on simple work-related decisions, understanding and carrying out complex instructions, and interacting with supervisors. (R. 127-128.) The ALJ also provided for moderate limitations on the ability to make decisions on complex work-related matters and moderate limitation in interacting with public and responding to usual work situations or changes in a routine work setting. (R. 127–128.) According to the VE, such an individual would be able to perform Plaintiff's past work. (R. 128.) The VE further concluded that such an individual could perform sedentary work as a Call Operator, Information Clerk, and Order Clerk. (R. 128–129.)

In the next hypothetical, the ALJ added further limitations, asking the VE to consider an individual with mental limitations from Exhibit 18F and the ability to lift and carry up to 10

6

pounds frequently but never more than 10 pounds. (R. 129-131.) The individual can stand 1 hour, sit 6 hours, and walk 1 hour in an 8-hour workday. (*Id*.) The individual requires the use of a cane but can walk 25–50 feet without the cane, frequently reach in all directions, handle, feel, finger, push, and pull, and frequently operate foot controls bilaterally. (*Id*.). The individual can never crawl; climb stairs, ramps, or ladders; or operate a vehicle. (*Id*.). Finally, the individual can occasionally balance, stoop, kneel or crouch but never around moving mechanical parts, care for his hygiene, handle paper files, and occasionally be exposed to heights, wetness, dusts, odors, humidity, fumes, extreme cold or heat, and vibrations. (*Id*.) In the same hypothetical, the ALJ said Plaintiff could shop, travel without a companion for assistance, ambulate without a wheelchair, walker, two canes, or crutches, use public transportation, prepare simple meals, care for his hygiene, and sort paper files. (R. 131.) The VE concluded that such an individual could perform as a Call Operator, Information Clerk, and Order Clerk. (R. 131.) The VE testified that his testimony was consistent with the Dictionary of Occupational Titles and Selected Characteristics of Occupations. (R. 132.)

### **(5)** *The Administrative Law Judge's Decision*

On May 27, 2010, the ALJ issued an unfavorable decision. (R.4–27.) The ALJ found Plaintiff to have discogenic and degenerative disorders of the spine and major depression. (R. 16.) The ALJ concluded that these impairments do not meet or medically equal the requirements of any impairments listed in 20 CFR 404. (R. 17.) Ultimately, the ALJ determined that Plaintiff retains the RFC to perform the exertional and nonexertional requirements of work, except for work more demanding than lifting or carrying ten pounds; standing/walking for about one hour in an eight hour workday; and sitting six hours in an eight hour work day. (R. 19.) The ALJ also noted limitations of frequent reaching; handling, fingering, feeling, and pushing/pulling with

both hands; frequent operation of foot controls with both feet; no crawling; no climbing; no working around moving, mechanical parts; occasional balancing, stooping, kneeling; occasional work at unprotected heights; and occasional exposure to humidity, dusts, odors, fumes, extreme heat, and vibrations. (R. 19.)

Plaintiff submits that the ALJ made three reversible errors: first, the ALJ rendered an improper credibility determination. (Pl.'s Opening Brief at 13.) Second, the ALJ rendered an improper RFC determination. (*Id*. at 18.) Third, the ALJ rendered an improper step five determination (*Id*. at 21.)

### C. Standard of Review

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may access the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

### D. Disability Standard

To qualify for Disability Insurance Benefits or Supplemental Security Income, the claimant must establish that he suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 CFR. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*See Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**E. Discussion**

Using the five-step analysis developed by the Secretary, the ALJ denied Plaintiff's claim. Steps one and two are not at issue as the parties agree that Plaintiff is not currently employed, and the ALJ determined that Plaintiff does have one severe impairment. (R. 16.) Step four is also not at issue as both parties agree that Plaintiff is unable to perform his past relevant work. (R. 25.) Steps three and five are at issue.

### (1) *The ALJ rendered a Proper Credibility Determination.*

Plaintiff first argues that the ALJ, contrary to Social Security Ruling 96–7p and 20 C.F.R. § 404.1529, used boilerplate language in dismissing Plaintiff's credibility. (Pl.'s Opening Brief at 13–14.) Plaintiff fails to explain where or how the ALJ incorrectly used boilerplate language. (*Id*. at 14.) While the ALJ used some boilerplate language, he adequately linked his statements to medical evidence in the record. (R. 20–21); *see also BJornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (explaining that boilerplate language is permissible when the ALJ supports his or her conclusions with the record).

Second, Plaintiff argues that the ALJ relied solely on the objective evidence rather than Plaintiff's subjective complaints of pain; he claims that his complaints of pain were consistent throughout the medical record. (Pl.'s Opening Brief at 15.) Plaintiff further claims that he persistently tried to reduce his pain through medications, physical therapy, and steroid injections. (*Id*. at 17.) Finally, Plaintiff argues that the ALJ improperly rejected his need for the cane on the basis that it was not prescribed. (*Id*. at 17.)

The ALJ's credibility finding is entitled to "considerable deference" and will not be disturbed unless it is "patently wrong." *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). To determine credibility, the ALJ must consider several factors including, but not limited to, the Plaintiff's daily activities, his level of pain or symptoms, aggravating factors, medication, treatment, and limitations. *See* 20 C.F.R. § 404.1529(c). Further, the ALJ must justify the credibility finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Here, contrary to Plaintiff's contention, the ALJ did adequately consider both the Plaintiff's subjective complaints of pain and the lack of objective medical evidence. (R. at 20–

25.) In fact, the ALJ examined Plaintiff's subjective complaints of pain and then compared them directly to the objective medical evidence for consistency and credibility. (*Id.*) For example, the ALJ compared Plaintiff's alleged leg pain and use of a cane to the objective medical evidence, finding multiple inconsistencies. (R. 22–23.) Further, the ALJ compared Plaintiff's back pain complaints to the objective medical evidence, noting Plaintiff's admission that the pain was "very well controlled" with Vicodin. (R. 22.) Additionally, the ALJ considered Plaintiff's complaints of mental illness, explaining further inconsistencies. (R. 23.) In 2007, Plaintiff's mood was normal; in 2009, Plaintiff was oriented; in 2010, Plaintiff never even claimed he was disabled by reason of mental illness. (R. 23.) The ALJ adequately addressed Plaintiff's subjective complaints and found them generally inconsistent with the objective medical record. (R. 22–25.)

**(2)** *The ALJ rendered a Proper Residual Functional Capacity Determination.*

Citing *Golembiewski v. Barnhart*, 322 F. 3d 912, 918 (7th Cir. 2003), the Plaintiff argues that the ALJ committed legal error in his RFC determination by failing to "consider the aggregate effect of this entire constellation of ailments—including those impairments that in isolation are not severe." (Pl.'s Opening Brief at 18.) Specifically, Plaintiff argues that, while his mental impairments are severe and compound his physical limitations, the ALJ only considered Plaintiff's depression in isolation. (*Id.*) Plaintiff further argues that the ALJ failed to incorporate his own findings into the RFC determination. (*Id.*)

The ALJ rendered a proper RFC determination. The ALJ must consider both severe and non-severe impairments. *See Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) ("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence

contrary to the ruling."). Here, the ALJ adequately considered all symptoms by following a two-part test: (1) determining whether there is an underlying medically determinable impairment, and (2) evaluating the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit Plaintiff's functioning. (R. 15.) At step one, the ALJ evaluated Plaintiff's complaints of numbness, tingling, and poor circulation in his legs, lumbar disc disease, unsteady gait, back pain, a pinched nerve in his neck, difficulty sleeping, past removal of a malignant mass from his lung, diminished breath sounds in left lung, slight headaches, and depression. (R. 20–21.)

The ALJ determined that the above impairments could cause the alleged symptoms, but the Plaintiff's testimony concerning the intensity, persistence, and limiting effects of those symptoms were not credible. (R. 21.) Specifically, the ALJ noted that Plaintiff's medical visits from 2006 through 2007 revealed no limping or leg pain (R. 21–22.) Further, Plaintiff tolerated rehabilitation treatment well in 2008 and 2009, and Plaintiff's medications effectively controlled his symptoms during this time. (R. 22.) In fact, Plaintiff reported that his pain was "very well controlled" with Vicodin. (*Id.*) With regard to Plaintiff's complaints of depression, his mood was normal, and he was oriented in all spheres in 2008 and 2009. (R. 23.) The ALJ "made every reasonable effort to obtain available information" when determining the credibility of Plaintiff's statements regarding the severity of his impairments. (R. 25.)

Finally, the Plaintiff claims that it is unclear from the ALJ's decision which medical opinions were given controlling weight. (*Id.*) While the ALJ gave the examining physicians', medical experts', and state agency reviewers' opinions "some weight," the ALJ found that Plaintiff was much more significantly limited when determining his RFC. (R. 19, 24.)

Ultimately, the ALJ rendered a proper RFC determination by evaluating Plaintiff's impairments in the aggregate. (R. 21–25.)

**(3)** *The ALJ rendered a Proper Step Five Determination.*

The Plaintiff argues that the ALJ did not incorporate all of Plaintiff's relevant limitations in the hypotheticals given to the VE. (Pl.'s Opening Brief. at 21.) This argument is without merit, however, because the ALJ first incorporated all the limitations discussed by the Medical Expert[3] and then included additional limitations, limiting the Plaintiff to sedentary work. (R. 129–131.)

**F. Conclusion**

The ALJ properly concluded that Plaintiff is not disabled under Social Security Administration standards. Therefore, this Court AFFIRMS the ALJ's decision.

SO ORDERED on February 27, 2013.

    s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE

---

[3] For example, the ALJ considered the ME's limitations in lifting, climbing crawling, operating a motor vehicle, and general exposure to the elements. (R. 129-130.)